UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

**MARMAC, LLC,**
**d/b/a MCDONOUGH MARINE SERVICES,**

       Plaintiff,

v.                                                Civil Action No. 2:23cv____

**HALO MARITIME DEFENSE SYSTEMS, INC.,**

       Defendant,

and

**THE UNITED STATES PATENT AND**
**TRADEMARK OFFICE,**

       Garnishee

**VERIFIED COMPLAINT**
**WITH REQUEST FOR RULE B ATTACHMENT**

COMES NOW, Plaintiff Marmac, LLC, d/b/a McDonough Marine Services ("McDonough" or "Plaintiff"), by counsel, and for its Verified Complaint against Defendant HALO Maritime Defense Systems, Inc. ("HALO"), *in personam*, and in support thereof alleges:

**PARTIES**

1. McDonough is a Louisiana limited liability corporation registered with the Virginia State Corporation Commission with its principal place of business at 8550 United Plaza Boulevard, Baton Rouge, Louisiana 70809, and is engaged in the business of marine transportation and barge chartering.

2. HALO is a corporation formed and existing under the laws of the State of Delaware with its principal place of business at 5 Puzzle Lane, Newton, New Hampshire 03858 and is engaged in the business of maritime security.

3. The United States Patent and Trademark Office (the "USPTO") is an agency of the Department of Commerce located at 600 Dulany Street, Alexandria, Virginia, 22314, and has the exclusive mandate under the United States Constitution to grant patents and maintain a registry of patents, within the United States.

## JURISDICTION AND VENUE

4. This is an action within the admiralty and maritime jurisdiction of this Court under 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure, in that a present controversy exists between the parties hereto in which Plaintiff asks this Court to adjudicate and determine the rights of the parties under a maritime contract.

5. Venue lies within the Eastern District of Virginia, Norfolk Division pursuant to 28 U.S.C. § 1391(b)(2) as this cause arises out of the chartering and servicing of barges on the navigable waters of the United States in the Port of Norfolk, Virginia, and the property to be attached is in the custody of a garnishee in Alexandria, Virginia.

## COMPLIANCE WITH RULE B AND LOCAL RULE

6. This action seeks the attachment and garnishment of certain intangible property owned by HALO within the Eastern District of Virginia, pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

7. This action requests writs of attachment and garnishment to be served upon the Office of General Counsel of the USPTO as Garnishee, in the manner provided in Local Admiralty Rule (e)(7); and 37 C.F.R. §§ 104.2(b) and 104.12.

8. This action contemplates recording an interest in patents issued to HALO by the USPTO such that the Marshal may exercise dominion and control over the *res* as to perfect this Court's admiralty jurisdiction over it and obtain security for judgment. The USPTO honors such remedies pursuant to 37 C.F.R. §§ 3.11 and 3.73, authorized generally by 35 U.S.C. §§ 2(a)(2) and (b)(2).

9. Pursuant to Rule B as promulgated by this Court's Local Admiralty Rule ("LAR"), HALO is "not found within the district" because it is not a Virginia Corporation, has no office in the Commonwealth of Virginia nor does it appear to be licensed, authorized or registered to do business in Virginia; hence, service upon the Defendant cannot be effected in person or upon an authorized officer or agent within the Commonwealth. Because the only effective service is through the Clerk of the State Corporation Commission, the Secretary of the Commonwealth, or under the Virginia long arm statute, the defendant is not found "within the district," as this Court has promulgated under LAR (b)(1). The attached affidavit, Verification II, contains every effort to find and serve.

## FACTS
*TERMS OF THE AGREEMENT*

10. On or about September 19, 2022, the parties entered into a Master Bareboat Charter (the "Charter") through which HALO agreed to pay charter hire for McDonough furnished barges equipped to suit HALO's needs at a mutually agreed upon rate for lengths of time determined by HALO's needs. A true and complete copy of the Charter is attached as **Exhibit A**.

11. Under the terms of the Charter, HALO was to pay its charter hire monthly commencing upon delivery of the barge in question until it was redelivered, subject to 1.5% interest for late payment. Section 2(B) of the Charter states as follows:

> Charter hire shall be due and payable monthly to OWNER at its place of business, commencing on the date of delivery of the Barge as stated in the Charter Order, and charter hire shall continue to be due and payable until the date the Barge is redelivered by CHARTERER to OWNER in accordance with this Agreement. Interest shall accrue on all unpaid charter hire at the rate of 1.5% per month, 30 days after date due.

12. In addition to bareboat chartering, the parties also contemplated <u>reimbursing McDonough for ancillary marine services</u>, such as shifting barges between locations and cleaning the barges once returned for HALO's convenience. Section 4(D) of the Charter states in relevant part as follows:

> Any and all costs and expenses incurred by either CHARTERER or OWNER to make the Barge in the same good order and condition as that in which the Barge was delivered to CHARTERER, including but not limited to cleaning and/or flushing salt water or any other foreign material or substance from internal compartments, voids and/or tanks, shall be for account of CHARTERER, whether or not incurred as a result of redelivery…

13. HALO further contracted in Section 14 of the Charter to <u>reimburse McDonough for any cost or expense</u> that McDonough incurred by transporting and/or restore hired barges to the condition required for proper termination.

14. Under the terms of the Charter, <u>HALO is legally liable to indemnify and hold harmless McDonough and reimburse it for the costs of enforcing its rights</u> under the Charter. Section 8 of the Charter states in relevant part as follows:

> CHARTERER agrees at its sole cost and expense to release, defend, indemnify, and hold harmless OWNER GROUP of and from any and all suits, causes of action, claims, demands, fines, penalties, or liens of every kind and character whatsoever, including those for . . . CHARTERER's breach of this Agreement…

15. Concerning HALO's liability for <u>McDonough costs and legal fees related to this action</u>, Section 16(B) states as follows:

> Should OWNER retain an attorney or seek recourse in a court of law for the purpose of enforcing any terms of this Agreement, or to collect any sums

4

due thereunder (including, but not limited to collection of charter hire due, redelivery costs, damages, clean-up costs) or to recover, repossess or restore the Barge, then OWNER shall be entitled to recover all reasonable attorneys' fees, expenses, and costs, incurred by OWNER from CHARTERER.

*TRANSACTIONS AND NONPAYMENT*

16. Pursuant to the Charter, between September, 2022, and June 1, 2023, HALO requested and McDonough furnished barges for pre-agreed lengths of time as memorialized in McDonough's invoices. McDonough arranged ancillary services which were invoiced in the same manner as charter hire. Collectively, these invoices were delivered to HALO in the ordinary course of business.

17. From time to time, HALO made partial payments upon its accounts. A true and complete copy HALO's running balance is attached as **Exhibit B**.

18. When delay in payments became substantial, McDonough sent correspondence to HALO alerting to the accounts due and demanding prompt payment.

19. HALO has refused to pay and McDonough seeks a judgment against HALO for the agreed invoiced amount for its services rendered in accordance with the Charter. In addition, McDonough seeks relief afforded by this Court's admiralty jurisdiction through Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

## **DAMAGES**

20. To date, HALO's outstanding charter hire is $109,008.81 and the totals due for ancillary services is $30,832.51 for a total of $139,841.32 for hire and services. *See* Exhibit B. The interest accrued from the charter hire accounts is approximately $19,714.17 for a grand total owed to date of $159,555.49 plus attorney fees.

21. HALO's breach of the Charter has led to McDonough incurring expenses to enforce its terms, including attorney fees and the costs of this action. McDonough asks this court to enter judgment on its behalf against HALO for the entire amount of damages resulting from HALO's failure to pay for services rendered. The total amount will be determined at trial.

### HALO'S PROPERTY WITHIN THE DISTRICT

22. On information and belief, HALO is the owner and/or assignee of twenty-four United States patents for marine barriers, gates, and supporting marine systems and methods. These patents are:

| | | |
|---|---|---|
| US 2014/0231734 A1; | US 9,863,109 B2; | US 2019/0236868 A1; |
| US 2015/0152615 A1; | US 2018/0080744 A1; | US 10,502,533 B2; |
| US 2015/0159335 A1; | US 2018/0266068 A1, | US 10,619,340 B2; |
| US 9,121,153 B2; | US 10,145,659 B1; | US 10,861,270 B2; |
| US 2015/0361631 A1; | US 10,215,540 B2; | US 2021/0114700 A1; |
| US 9,394,660 B2; | US 10,280,579 B2; | US 2021/0396498 A1; |
| US 2016/0289907 A1; | US 2019/0145743 A1; | US 11,414,165 B2; |
| US 9,683,342 B2; | US 2019/0226170 A1; | US 11,686,557 B2 |

23. Plaintiff requests this Court to attach the above identified twenty-four patents until either a special bond is tendered into Court by HALO, or its agents and guarantors, or later-identified garnishees, as a replacement *res* against which McDonough may claim; or the sale of any one or more of the patents on the courthouse steps results in sufficient funds as to satisfy the total judgement and *custodia legis* expenses.

24. To that end, pursuant to Rule 4(c)(3) of the Federal Rules of Civil Procedure and LAR (e)(5)(A), Plaintiff requests this Court to appoint the undersigned, or any other attorney, paralegal, or agent of Kaufman & Canoles as substitute process server. Plaintiff seeks to serve the Process of Maritime Attachment and Garnishment together with a copy of the Verified Complaint, this Court's Order, and any interrogatories, upon the Garnishee with all deliberate speed so that it may be protected against potential judgment deficiencies as interest and costs of litigation accrue against Defendant.

**WHEREFORE**, Plaintiff Marmac, LLC, d/b/a McDonough Marine Services prays for the following:

(1) entry of a civil judgment against Defendant HALO Maritime Defense Systems, Inc., in an amount not less than $159,555.49 but the total to be determined at trial, plus prejudgment interest, post judgment interest, costs and attorneys' fees; and

(2) an order directing the Clerk to issue Process of Maritime Attachment and Garnishment to be served on the Office of General Counsel for the United States Patent Office naming the patents identified above to obtain security for judgment, and that all persons claiming any interest in the same be cited to appear and to answer the matters alleged in the Verified Complaint; and

(3) an order appointing counsel or agents of counsel as substitute servers of Process when circumstances do not require Process to be served by a U.S. Marshal; and

(4) that this Court retain jurisdiction over this matter and any of the claims currently pending, or which may be initiated in the future, including any appeals or concurrent claims to jurisdiction; and

(5) award Plaintiff any further relief deemed just and proper.

Dated:  December 21, 2023

**MARMAC, LLC, d/b/a MCDONOUGH MARINE SERVICES**

By: */s/ Patrick M. Brogan*
Patrick M. Brogan (VSB No. 25568)
Christopher M. Seelie (VSB No. 99544)
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
T:  (757) 624-3000
F:  (888) 360-9092
pmbrogan@kaufcan.com;
cmseelie@kaufcan.com
*Counsel for Plaintiff*